## Sanders v. Pennsylvania Railroad Company, Appellant.

Argued September 29, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Robert D. Dalzell,* of *Dalzell, McFall & Pringle,* for appellant.

*J. Thomas Hoffman,* with him *Willard I. Singer,* for appellee.

OPINION BY MR. JUSTICE STERN, November 27, 1939:

In asking for a new trial in this case defendant did not complain of the admission or rejection of any evidence, nor of error in the charge, but assigned as reasons only that the verdict was against the weight of the evidence and was excessive. The court below, in the exercise of its discretion, was well justified in refusing a new trial on these grounds, and defendant, apparently realizing this, now concentrates the greater part of its attack upon the overruling of the motion which it presented for judgment n. o. v.

The facts, as testified to by plaintiff and his witnesses, were as follows: On a November morning in 1935 he drove a truck eastwardly along Huff Avenue in South Greensburg. That avenue is intersected by tracks of defendant, six in number, running in a northerly and southerly direction, the first to the west being a side track, then the south-bound main track, the north-bound main track, and three more side tracks. Plaintiff came

to within a few feet of the western-most siding and there stopped, looked and listened. His view northward, that is to his left, was restricted by a string of box cars standing a short distance away upon the siding. He proceeded into the 20-foot space between the siding and the south-bound main track and there again stopped, looked and listened. Ordinarily, according to testimony on behalf of defendant, at that point plaintiff could have seen up the track for a distance of half a mile, but, according to him and his witnesses, the morning was rainy and foggy, and these conditions, together with smoke from neighboring manufacturing plants, reduced the visibility to about 250 feet. He started across the south-bound main track at a speed of two or three miles an hour and then saw a train coming out of the fog 250 feet away. As his truck was loaded and there was a slight up-grade, he realized that he would not be able to clear the track in time and thought it better to shift into reverse and try to back off. In pursuance of this movement the truck stopped with its front at the far rail and at that moment the train, going at the rate of 35 miles an hour, struck it and ran more than 700 feet beyond the crossing. Plaintiff was seriously injured.

To support the charge of negligence plaintiff relied upon testimony that blinker lights situated at the crossing were not working at the time of the accident and that no audible signal was given from the locomotive until after he saw the train. As to the condition of haze and fog, the non-operation of the lights, and the failure to blow the whistle until the train was within 250 feet of the crossing, his testimony was supported in general by that of three other witnesses. Defendant, on the other hand, produced a large number of witnesses, many disinterested, some of whom testified that the bell was rung, others that blasts were sounded from the locomotive when it was still 1400 feet from the crossing, that the flashing signal lights were working, and that the weather was clear. There thus resulted a typical case

for the jury: *Zimmerman v. Pennsylvania R. R. Co.,* 302 Pa. 406; *Wade v. Pennsylvania R. R. Co.,* 307 Pa. 259. The testimony of plaintiff and his witnesses in regard to the blowing of the whistle was not merely of the negative type so frequently criticized by the courts as of little weight, but consisted of direct assertions by plaintiff, and by corroborating witnesses who were in a position to know, that the whistle was not sounded in sufficient time before the train reached the crossing to make it effective as an adequate warning of approach: *Childs v. Pennsylvania R. R. Co.,* 150 Pa. 73, 78; *Cummings v. Pennsylvania R. R. Co.,* 304 Pa. 219.

There was testimony on the part of defendant that plaintiff did not stop before starting over the crossing, but his positive statement to the contrary prevented the taking of the issue of contributory negligence from the jury. This is not a case where a vehicle is struck immediately on entering upon the rail, nor where there is a clear view of the track for a considerable distance and therefore a person crossing it must have seen an oncoming train had he looked as required by law. Here, the weather conditions are alleged to have reduced the visibility to a distance which a train, traveling at the speed at which the one here involved was operated, would have traversed in five seconds, and therefore it cannot be said to have been impossible, or even improbable, that the train was beyond the range of vision of plaintiff at the time he started across the south-bound track. Under such circumstances the doctrine of the futility of testimony opposed to undisputed physical facts is inapplicable: *Frank v. Reading Co.,* 297 Pa. 233, 239.

The responsibility of decision in this litigation lay with the jury. The court could not have assumed it without overstepping the bounds of its legitimate functions.

Judgment affirmed.