# Scollon v. Pennsylvania Railroad Company

*Frank P. Barnhart,* for plaintiff.

*Englehart Lorimer,* for defendant.

GRIFFITH, J., August 22, 1944.—This is a motion for new trial requested by plaintiff after a verdict for defendant in an action of trespass for damages resulting ·from personal injuries to plaintiff occasioned by the

automobile which she was operating being struck by the rear of a train of coal cars owned and operated by defendant company.

In plaintiff's brief, there are stated to be two questions involved: (1) Whether the trial judge erred in his instruction to the jury on the question of positive and negative testimony; and (2) whether the court erred in failing to instruct the jury on the sufficiency of the light on the rear of defendant's car that collided with plaintiff's automobile.

As to the second question, we believe it is not necessary to enter into any detailed discussion because plaintiff's counsel, at the oral argument, stated that he felt that the second ground was not sufficient to justify the court in awarding a new trial, for the reason that the court, at the conclusion of its charge, requested counsel to advise whether anything had been omitted or misstated in the charge and counsel did not call the attention of the court to the fact that the charge did not cover the sufficiency of the light on the rear of defendant's coal car. Moreover, the contention was not made at the trial that the light displayed was insufficient, plaintiff's contention being that no light at all had been displayed.

We have, therefore, before us for disposition the single question as to whether there was error in the charge on the question of positive and negative testimony. We believe there was not.

The sole witness called by plaintiff on the question of the absence of a light on the rear of defendant's train as it approached the crossing at which she was injured and defendant's failure to sound a warning was plaintiff herself. Plaintiff testified that she did not see a light, that if there had been a light she would have seen it, and that there was no light on the rear of the train. She reiterated each of these statements several times. Likewise, with regard to the whistle, plaintiff testified not only that she did not hear a whistle but that there

was none blown, and that if there had been a whistle blown she would have heard it. She was seated in her automobile with the windows closed, with the exception of the ventilators, at the time she approached the railroad crossing.

A number of witnesses called by defendant testified positively as to the presence of a light on the rear of the train, the light being a lighted lantern held by the brakeman, as to the blowing of three blasts as the train started, then the blowing of two long and two short blasts as the train approached the crossing, and finally that the brakeman on the rear car continuously blew the back-up whistle attached to the airbrake hose on that car. These matters were testified to not only by all the members of the train crew but likewise by two disinterested bystanders.

In view of this testimony the court charged the jury that two kinds of testimony were involved in this case, positive and negative, that plaintiff's testimony was negative testimony, that the effect of the same was not necessarily that the fact testified to did not happen but merely that the witness did not see or hear it, and that the testimony that the fact did happen is known as positive testimony and that if the witness is believed then the event did happen. The court pointed out that on the other hand the witness who testifies to negative testimony may be believed and yet the event may have happened, even though the negative testimony was truthful. After being requested by plaintiff's counsel to state that plaintiff's testimony was positive testimony, the court then charged the jury that negative testimony is as to the nonexistence of a fact, even though positively testified to, and that positive testimony is as to the existence of a fact and that there is a difference in these classes of testimony; that even though a witness states positively that a fact did not occur, the effect of such testimony can only be that the witness did not observe the fact, even though the

witness be completely truthful, and that testimony that a fact occurred is positive testimony and that there is a difference in the weight of these two classes of testimony.

Specific exception was taken by counsel for plaintiff to the portion of the charge "wherein the court states in the conclusion there is a difference in the weight of positive testimony and negative testimony, as the court described it".

Among the reasons advanced by plaintiff as to why a new trial should be granted is one wherein plaintiff complains of error in that the court did not state to the jury that what the court called negative testimony may sometimes be even stronger than what the court called positive testimony. Of course, it may be under certain circumstances that negative testimony may be stronger than positive testimony, just as circumstantial evidence may on occasion be stronger than direct evidence, but counsel did not request the court to state to the jury that under some circumstances negative testimony may be stronger than positive, even though the court requested counsel for advice as to whether anything may have been omitted from the charge. Under the testimony in this case, certainly the negative testimony of plaintiff was by no means as strong as the positive testimony of the numerous witnesses called by defendant and, therefore, the fact that under certain circumstances negative testimony may be stronger than positive had no direct application to the facts involved in this case, although the court would no doubt have charged to that effect if so requested by counsel. In the absence of a request, however, we do not believe that the failure so to do was error.

The principal contention of plaintiff, however, is that the court charged the jury that they might give more weight to positive testimony, as the court defined it, than to negative testimony, as defined by the court. It will be noted that in the charge the trial judge de-

fined positive testimony as testimony of the existence of a fact, and negative testimony as testimony as to the nonexistence of a fact. There has been some confusion as to the definition of positive and negative testimony, but in the charge it was very clearly defined in the above manner, so that the jury must have understood the meaning of the court when it referred to positive and negative testimony.

Plaintiff has cited no authorities to support her view that there is no difference in the weight to be given testimony as to the existence of a fact and testimony as to its nonexistence.

"Other things, such as opportunity to observe and the credibility of witnesses, being equal, greater weight and probative value should be given to positive and affirmative evidence than to negative evidence; in other words, the testimony of a witness who testifies positively that a certain fact existed, or an event occurred, is, generally speaking, entitled to more weight than the evidence of another witness who swears that the event did not occur, or that he did not observe its occurrence . . .": 32 C. J. S. 1084, 1085.

Plaintiff defines positive testimony as testimony given by a witness in a position to see and hear and know what occurred, and who testifies positively that it did not occur. It is true that many of the cases make this distinction between positive and negative testimony, and hold that such testimony is positive, even though the witness testifies as to the nonexistence of a fact, but in none of the cases cited by plaintiff does the court hold that testimony as to the existence of a fact and testimony as to its nonexistence have the same weight.

In the case of Buckman v. Philadelphia & Reading R. R. Co., 232 Pa. 351, the question was whether there was sufficient evidence to go to the jury, that is, was there more than a mere scintilla. The court held that, since the witnesses who testified as to the failure of

defendant's locomotive to sound a whistle were in a position to hear, were attentive, and testified with conviction that no whistle sounded, such testimony was sufficiently positive to amount to more than a mere scintilla and, therefore, must go to the jury. Even here the court recognized that such testimony was negative in character, but felt it was sufficient to enable plaintiff to make out a prima facie case. In the case with which we are now concerned, the trial judge likewise felt that the testimony of plaintiff was sufficiently positive to amount to more than a mere scintilla and, therefore, permitted the case to go to the jury, but instructed the jury that plaintiff's testimony was negative in the sense that she testified to the nonexistence of a fact, and that there was a difference in the weight of such testimony from the weight of testimony of the existence of the fact.

In the case of Hugo v. Baltimore & Ohio R. R. Co., 238 Pa. 594, the jury found a verdict for plaintiff and the court below sustained defendant's motion for judgment n. o. v. The question was whether plaintiff had produced sufficient testimony to go to the jury, and the Supreme Court held that plaintiff's testimony was sufficiently positive and direct to make out a prima facie case.

In Simons v. Philadelphia & Reading R.R., 254 Pa. 507, the holding of the court was merely that the testimony of three witnesses who said they looked and listened and heard no warning signal, and that there was none given, was sufficiently positive and direct to permit the case to go to the jury.

In Sharpless v. D. L. & W. R. R., 286 Pa. 439, the court held that the testimony of plaintiff was not so purely negative as to require judgment n. o. v. for defendant after a verdict for plaintiff.

In the case of Sanders v. Pennsylvania R. R. Co., 336 Pa. 424, the court held that the direct assertion by witnesses in a position to know that a whistle was not

sounded is not testimony of such a "negative type" as to prevent its submission to the jury.

The question in the case before us, however, is not whether plaintiff's case should have been permitted to go to the jury (it was allowed to go to the jury), but whether the charge of the court imposed upon plaintiff any burden which she should not have had to assume. We think it did not. Certainly the jury was entitled to an instruction on the difference between positive and negative testimony. In the charge, the trial judge assumed that the testimony of plaintiff, who was the only witness as to defendant's alleged negligence, was of such positiveness that the jury could find from it that there was no light on defendant's train and no warning signal was given. At page 23 of the charge, the court said:

"Since there is a serious dispute in this case as to whether there was a light on the rear of that train and whether there was any sound of its approach given, except the one whistle from the engine, which the plaintiff admits she heard, it is our duty to call your attention to the fact that there are two kinds of testimony and that they are involved in the case." Also, at page 4 of the charge, the court said:

"In other words, on the evening of October 24, 1941, at the time Miss Scollon was approaching and about to cross this railroad in the Borough of Barnesboro, did the Pennsylvania Railroad Company use due care under all the circumstances? Were they as careful as an ordinarily prudent person or railroad company should be at their highway crossings? For example, did they give sufficient notice of the approach of the train? Was there sufficient illumination on the rear end of the train that crossed the crossing? Was there a sufficient amount of whistling, we will say? Those are matters for you, members of the jury."

In the case of Urias v. Pennsylvania R. R. Co., 152 Pa. 326, the court was considering the testimony of

witnesses who said that they did not hear any warning, and some who said that they could have heard it if it had been given. Defendant's witnesses testified that the warning was given. The court said (p. 328) :

"The difference between positive and negative testimony upon a question of this kind is very marked, and it would be well if the attention of jurors was more pointedly called to it by the court in the trial of such cases. One witness who hears the ringing of a bell is worth more than the testimony of a dozen witnesses who did not hear it, unless in some manner their attention has been especially called to it. The witness who heard the bell either tells the truth, or he tells a deliberate and willful falsehood, while the witness who did not hear the bell may be, and is probably truthful. The bell may be rung or the whistle blown without attracting the attention of persons who are familiar with such sounds."

In the case of Hess v. Williamsport & North Branch R. R. Co., 181 Pa. 492, the jury found a verdict in favor of plaintiff. Two of the witnesses had testified that "they were looking out for trains, and that they did not see any light upon this engine or its tender, and they did not hear any blowing of the whistle or any ringing of the bell." The trial judge instructed merely that "Negative testimony of this kind has much less weight than positive testimony." The Supreme Court, however, said in regard to this instruction:

"His instructions [those of the trial judge], however, as to the relative value of positive and negative testimony were very meager; they were inadequate, in view of the nature of the testimony, and in this particular, under the authority of Urias v. Railroad Company, 152 Pa. 326, there was error."

In Tolson v. P. R. T. Co., 248 Pa. 227, the trial judge charged in part as follows (p. 229) : "In that connection I call your attention to the difference between positive and negative testimony. Because a witness did not

hear or see a certain thing, that is not conclusive evidence that what he did not see or hear, did not exist or did not happen, but that is merely negative evidence. This is not as strong as positive evidence. You will understand that, of course, from your experience in matters in general."

A verdict and judgment for defendant in this case were affirmed by the Supreme Court and, while the decision in this case did not hinge on this point, for here plaintiff acknowledged that he had actually seen the car approaching 150 feet away, yet the Supreme Court found that the charge was not error. The court said (p. 229) :

"Appellant urges that the trial judge erred in referring to the evidence of Risky and Craig, in respect to the giving of signals by the approaching car as negative testimony. That the testimony of these two witnesses, to the effect that they did not hear any signal given or bell rung was negative testimony, and that it was not error to so refer to it, is clear." The witnesses referred to had testified that they heard no signal given by the approaching car, and one of them testified that if the motorman had rung the bell he would have heard it as he was close to the car when it passed, and also said that he was "always listening for the motorman to give warning".

We are not concerned here with the application of the general principle referred to in some of the cases above cited, that where negative testimony is contradicted by positive testimony the negative testimony amounts to nothing more than a mere scintilla and cannot carry the case to the jury. This principle is sometimes difficult to apply to a given state of facts. Therefore, in this case the matter was permitted to go to the jury and the jury found for defendant.

Even if plaintiff's testimony was not negative in the sense that, in the face of positive testimony on the part of defendant, it would amount to a mere scintilla not

sufficient to carry her case to the jury, yet it was testimony of a negative character as it asserted the nonexistence of a disputed fact. As such it became the duty of the trial judge to explain to the jury the difference between such testimony and positive testimony affirming the existence of a fact, and to point out to the jury that the two classes of testimony have different weight. Had he not done so, and had the jury returned a verdict for plaintiff, defendant would have been entitled to a new trial: Hess v. Williamsport & North Branch R. R. Co., supra.

In other words, there are two kinds of negative testimony: (1) Negative testimony given by a witness not in a good position to observe or who was not paying attention to the event which it is alleged did not occur; (2) negative testimony given by a witness in a good position to observe and who was paying close attention to the event, the nonoccurrence of which is averred. The first type is of such doubtful probative value that it is regarded as a mere scintilla and cannot of itself carry plaintiff's case to the jury. The second type, though negative in that it affirms the nonexistence of an event, has sometimes been called positive to distinguish it from the type of negative testimony which will not carry a case to the jury. Testimony of the latter type is of itself sufficient to make out a prima facie case which must be passed on by the jury, although the jury's attention should be called to the fact that since it affirms the nonexistence of an event that event may have occurred even though the witness be entirely truthful.

Plaintiff also advances the usual reasons, that the verdict was against the law, the evidence, and the weight of the evidence, but after reviewing the testimony we feel that the evidence was overwhelmingly in favor of defendant, both as to defendant's lack of negligence and as to plaintiff's contributory negligence.

Defendant believes that the verdict of the jury amounted to a finding that plaintiff was guilty of con-

tributory negligence. We cannot agree with defendant's contention in this regard, but under the view we have taken of plaintiff's motion for a new trial that matter need not be discussed. We, therefore, enter the following

### Decree

And now, August 22, 1944, after argument and upon due consideration, plaintiff's motion for a new trial is hereby dismissed, and the prothonotary is directed to enter judgment upon the verdict upon payment of the jury fee.